## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

NANCY OZEE, individually,     )
and     )
LEANNA DOUGLAS, as Next Friend of     )
C.M., a minor,     )    Cause No:
    )
    Plaintiffs,     )
    )
v.     )
    )
UNITED STATES OF AMERICA,     )
    ***Serve:***     )
    Timothy Garrison     )
    U.S. Attorney     )
    400 E. 9th Street, Room 5510     )
    Kansas City, MO 64106     )
    )
    ***Serve:***     )
    William P. Barr     )
    U.S. Attorney General     )
    U.S. Department of Justice     )
    950 Pennsylvania Ave. N.W.     )
    Room: B-103     )
    Washington, D.C., 20530-0001     )
    )
    Defendant.     )

## **COMPLAINT**

COME NOW Plaintiffs Nancy Ozee, individually, and Leanna Douglas, as Next Friend of C.M., a minor, by and through their attorneys, and for their Complaint against Defendant United States of America, plead and state as follows:

1.     This action is brought pursuant to 42 U.S.C. §233, known as the "Public Health Services Act" and 28 U.S.C. §1346(b), commonly known as the Federal Torts Claims Act and pursuant to this Court's pendant jurisdiction; the minor plaintiff, C.M., and her next friend, Leanna Douglas, reside in the above judicial district and the omissions complained of occurred in said judicial district.

1

2. Plaintiff Nancy Ozee is a resident citizen of the state of Arizona and is the natural mother of the decedent, Richard Dale Martin, who is the subject of this Complaint.

3. The minor Plaintiff C.M., is a resident citizen of the state of Missouri and is the natural daughter of the decedent Richard Dale Martin.

4. Leanna Douglas is a resident citizen of the state of Missouri and is the natural mother of C.M. and has agreed to serve as Next Friend of C.M. for purposes of pursuing this Complaint.

5. Plaintiffs' decedent Richard Dale Martin, at all times relevant, received healthcare from Dr. Donna Richardson and Justin McNeeley, RN. At all times relevant, Dr. Richardson and RN McNeeley were acting in the course and scope of their agency and/or employment with Harry S. Truman Memorial Veterans' Hospital, a federally funded healthcare facility; accordingly, Plaintiffs bring this cause of action pursuant to 28 U.S.C. §71 et seq., the Federal Torts Claims Act.

6. The medical care complained of in this Complaint occurred on or about September 18 through 20, 2018, and Richard Martin died on October 1, 2018. Plaintiffs presented their claim against the United States of America, in writing, to the U.S. Department of Veterans Affairs, Office of General Counsel and to the U.S. Department of Health and Human Services on October 16, 2019. Said claim was received by the United States of America on or about October 17, 2019.

7. More than six months has lapsed since Plaintiffs presented their claims to the appropriate agency, and no response has been received; therefore, all administrative remedies have been timely filed, pursued and exhausted pursuant to 28 U.S.C. §26.71 – 26.75.

8. Dr. Donna Richardson and Justin McNeeley, RN held themselves out as professional health care providers with specialized expertise in all aspects of medical, surgical,

hospital and nursing care, respectively. Upon information and belief, and at all pertinent times herein, Dr. Richardson and Nurse McNeeley were acting within the scope of their employment with, *inter alia*, Harry S. Truman Memorial Veterans' Hospital and the United States of America.

9.     Donna Richardson, M.D. is, and was at all relevant times, a physician licensed to practice medicine in the state of Missouri and practice in the field of general surgery.

10.     Justin McNeeley, RN is, and was at all relevant times, a registered nurse licensed to practice nursing in the state of Missouri.

11.     Plaintiffs' decedent Richard Martin presented to Dr. Richardson and Harry S. Truman Memorial Veterans' Hospital on August 30, 2018 for placement of a right subclavian Port-A-Cath to be used for adjuvant chemotherapy for his colon cancer. Thereafter, he continued to treat with Dr. Richardson and Harry S. Truman Memorial Veterans' Hospital for chemotherapy treatments.

12.     On September 5, 2018, Richard Martin received his first cycle of FOLFOX through the Port-A-Cath placed by Dr. Richardson.

13.     On September 6, 2018, Richard Martin presented to the Harry S. Truman Memorial Veterans' Hospital emergency department with drainage around the right upper chest Port-A-Cath site. The dressing was removed; the area was cleaned; and another dressing was applied. The ER nurse reported she did not notice any signs or symptoms of infection.

14.     On September 7, 2018, Richard Martin presented to Harry S. Truman Memorial Veterans' Hospital where the chemotherapy pump was disconnected, and the Port-A-Cath was flushed with 20 cc normal saline and 3 cc heparin.

15.     On September 18, 2018, Richard Martin presented to Harry S. Truman Memorial Veterans' Hospital for his second cycle of FOLFOX. When the dressing was removed from the

3

Port-A-Cath site, there was erythema around the incision site and a lot of puffy swelling with fluctuance. Richard Martin reported soreness in the site for the last few days.

16. On September 18, 2018, Dr. Richardson performed a bedside ultrasound of the Port-A-Cath site and aspirated the seroma around the site. The fluid aspirated was described as serosanguineous, and a Gram stain showed many neutrophils but no organisms. A culture of the fluid was pending as of this visit, and Richard Martin was advised to return in 2 weeks.

17. On September 19, 2018, the electronic medical record microbiology report of the Port-A-Cath aspirate revealed it was growing 1+ Gram-positive organisms.

18. On September 20, 2018 at 9:25 a.m., the microbiology report in the electronic medical records was finalized and stated that it was growing *Staphylococcus aureus*.

19. On the afternoon of September 20, 2018, Richard Martin presented to Harry S. Truman Memorial Veterans' Hospital where he was seen by RN McNeeley. RN McNeeley disconnected the port from the infusion and flushed the port with 10 cc of normal saline twice and 3 cc of heparin. RN McNeeley noted clear, non-purulent drainage leaving the port site.

20. On September 25, 2018, EMS providers found Richard Martin at home where he reported he had been weak, and the port site was now seeping blood.

21. On September 25, 2018, Richard Martin was admitted to Harry S. Truman Memorial Veterans' Hospital where he was found to have positive blood cultures for *Staphylococcus aureus*, as well as myocarditis and endocarditis.

22. On September 25, 2018, the Port-A-Cath was removed, and the tip grew *Staphylococcus aureus*.

23. On September 28, 2018, Richard Martin required intubation for respiratory failure and hemodialysis for renal failure.

24.     On October 1, 2018, Richard Martin arrested and was pronounced dead.

### COUNT I

### WRONGFUL DEATH - NANCY OZEE, AND C.M., THROUGH HER NEXT FRIEND, LEANNA DOUGLAS V. U.S.A.

COME NOW Plaintiffs Nancy Ozee, and C.M., through her Next Friend, Leanna Douglas, and for Count I of this Complaint against U.S.A. pleads and states as follows:

25.     Plaintiffs hereby incorporate paragraphs 1-24 as though fully set forth herein.

26.     At all times relevant, Dr. Richardson was under a duty to exercise that degree of skill and learning ordinarily exercised by members of her profession acting under the same or similar circumstances. Defendant, by and through said employee, Dr. Donna Richardson, breached said duty in one or more of the following particulars:

  a)    Negligently and carelessly failed to timely diagnose and treat Richard Martin's Port-A-Cath infection on September 18, 2018 or during any time prior to September 25, 2018;

  b)    Negligently and carelessly failed to timely inform Richard Martin that his Port-A-Cath culture grew *Staphylcoccus aureus* and was infected on September 20, 2018 or at any time prior to September 25, 2018;

  c)    Negligently and carelessly failed to timely direct Richard Martin to seek medical attention and treatment for his infected Port-A-Cath on September 18, 2018, September 20, 2018, and anytime prior to September 25, 2018;

  d)    Negligently and carelessly failed to timely follow up and learn the results of the culture she ordered for Richard Martin's Port-A-Cath fluid sample between September 18, 2018 and September 25, 2018;

5

e) Negligently and carelessly failed to follow hospital policies and procedures for following up and learning the results of tests ordered for Richard Martin;

f) Negligently and carelessly failed to timely recognize the signs and symptoms of infection on September 18, 2018;

g) Negligently and carelessly informed Richard Martin to return for a follow-up visit in 2 weeks when he had signs of infection of his Port-A-Cath and the results of his culture were unknown on September 18, 2018;

h) Negligently and carelessly failed to timely remove the infected Port-A-Cath prior to September 25, 2018;

i) Negligently and carelessly failed to prescribe appropriate antibiotics to treat Richard Martin's infection prior to September 25, 2018;

j) Negligently and carelessly failed to refer Richard Martin for infectious disease consultation prior to September 25, 2018;

k) Negligently and carelessly failed to follow hospital policies and procedures for treating Port-A-Cath infection or suspected infections; and

l) Such other acts of negligence as the discovery may reveal.

27. At all times relevant, Justin McNeeley, RN was under a duty to exercise that degree of skill and learning ordinarily exercised by members of his profession acting under the same or similar circumstances. Defendant, by and through said employee, Justin McNeeley, RN, breached said duty in one or more of the following particulars:

a) Negligently and carelessly failed to check the results of Richard Martin's Port-A-Cath fluid cultures on September 20, 2018, prior to pushing fluids through the Port-A-Cath;

6

b)     Negligently and carelessly failed to recognize the signs and symptoms of Richard Martin's Port-A-Cath infection on September 20, 2018;

c)     Negligently and carelessly failed to consult or inform a physician of Richard Martin's Port-A-Cath infection on September 20, 2018;

d)     Negligently and carelessly failed to inform Richard Martin that his Port-A-Cath fluid culture grew *Staphlyococcus aureus* during his visit on the afternoon of September 20, 2018; and

e)     Such other acts of negligence as the discovery may reveal.

28.     As a direct and proximate result of one or more of the foregoing acts and/or omissions of negligence on the part of Defendant and its employees, Richard Martin died on October 1, 2018.

29.     As a direct and proximate result of the injuries to and death of Richard Martin, Plaintiffs were required to expend, incur and become indebted for medical and funeral expenses.

30.     As a direct and proximate result of the injuries to and death of Richard Martin, Plaintiffs have lost the financial support and earnings of Richard Martin.

31.     Plaintiffs have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training and support of Richard Martin, together with all damages that he sustained before his death and for which he would have been entitled to recover had he lived.

32.     As a direct and proximate result of the carelessness and negligence of the United States of America, by and through its employees, Dr. Donna Richardson and Justin McNeeley, RN, Plaintiffs have sustained damages in the of sum of ten million dollars.

7

33.     A copy of counsel's affidavit as required by Mo. Rev. Stat. §538.225 is filed simultaneously with this Complaint and incorporated by reference.

WHEREFORE Plaintiffs pray this Honorable Court for judgment in favor of Plaintiffs and against the United States of America in a sum just, reasonable and adequate to compensate Plaintiffs for their damages in the sum of ten million dollars, for costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## CONSTITUTIONAL CHALLENGE

COME NOW Plaintiffs and for their Constitutional Challenge and at this earliest opportunity state as follows:

34.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 33 as though fully set forth herein.

35.     House Bill 393 and Senate Bill 239 violate the requirements in Article III, Section 23 of the Missouri Constitution that a bill have only a single subject and that the subject be clearly expressed in its title.  The title of HB393 and Senate Bill 239 purport to repeal various statutes and enact in lieu thereof twenty-three new sections *relating to claims for damages and the payment thereof.*  This title is unconstitutionally under-inclusive because the bill addresses multiple subjects and because some of the provisions enacted under the bill relate to claims other than claims for damages.

36.     Senate Bill 239 improperly purports to create a new cause of action for medical malpractice, despite claims of medical malpractice being an inviolate right under the common law of Missouri, as part of the original Constitution when this State came into being.

37.     In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, and 538.215 violate:

8

a.      the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so;

b.      Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest;

c.      the guarantee of open courts and certain remedies set forth in Art. I, § 14 of the Missouri Constitution by denying medical negligence plaintiffs free and open access to Missouri's courts of justice and a certain remedy afforded for every injury;

d.      the right to trial by jury set forth in Art. I, 22(a) of the Missouri Constitution.

e.      the separation of powers, established by Article II, Section 1 of the Missouri Constitution because the legislature has exercised a power properly belonging to the judicial department, namely, the judgment regarding the proper amount of damages in any given case;

f.      the prohibition against special laws granting to any corporation, association or individual any special or exclusive right, privilege or immunity, established by Article III, Section 40(28) of the Missouri Constitution in that these laws grant an immunity to certain corporations, associations or individuals in the health care industry which is not otherwise extended to corporations, associations or individuals in other industries;

9

g.　the guarantee of due process of law set forth in Art. I, § 2 of the United States Constitution without a rational basis that furthers a legitimate interest;

h.　the guarantee of equal protection set forth in the United States Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so; and/or

i.　the right to trial by jury set forth in the Seventh Amendment to the federal Constitution.

38.　In failing to provide a reasonable index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, and 538.215 violate:

a.　the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

b.　Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest.

c.　the guarantee of open courts and certain remedies set forth in Art. I, § 14 of the Missouri Constitution by denying medical negligence plaintiffs free and open access to Missouri's courts of justice and a certain remedy afforded for every injury.

d.　the right to trial by jury set forth in Art. I, 22(a) of the Missouri Constitution.

e.　Art. I, § 26 of the Missouri Constitution by taking private property without just compensation.

10

39.     R.S. Mo. §§ 538.205, 538.210, and 538.215 violate substantive due process inasmuch as the legislature is substituting its judgment regarding the amount of compensation due to a plaintiff without any consideration of (1) the nature of the injury; (2) the severity of the injury; (3) the wrongfulness of the defendant's conduct ; or (4) the impact of the injury on the plaintiff's ability to enjoy life and liberty; and by so doing the above statutory cites deny the medical malpractice plaintiff a cognizable liberty interest by infringing on the constitutionally guaranteed right to have damages determined by a jury with respect to the award of non-economic damages.

40.     Section 538.225 of the Revised Statutes of Missouri, which requires Plaintiff's counsel to submit an affidavit stating that counsel has obtained the written opinion of a legally qualified health care provider that each defendant had breached the applicable standard of care, purports to limit the definition of "legally qualified health care provider" to those who either are practicing or have recently practiced the same specialty as the Defendant, and purports to require the court to dismiss the action if either Plaintiff's counsel fails to submit said affidavit or, after in camera review of the written opinion, the court determines that there is not probable cause to believe that a qualified and competent health care provider will testify that the decedent was injured due to medical negligence by Defendants, violates:

> a.      Plaintiff's right to open courts and a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution;
>
> b.      Plaintiff's right to trial by jury, guaranteed by Article I, Section 22(a) of the Missouri Constitution;
>
> c.      The separation of powers, established by Article II, Section 1 of the Missouri Constitution;

11

d.   The requirement that any law amending or annulling a Supreme Court rule of practice, procedure, or pleading be limited to that purpose, established by Article V, Section 5 of the Missouri Constitution; and

e.   Places on the Plaintiff an evidentiary burden in the filing of this action greater than required to meet Plaintiff's burden of proof at trial.

41.   Section 408.040 of the Revised Statutes of Missouri, which purports to establish different rates for calculation of post-judgment interest in tort and non-tort actions, as well as different rates for the calculation of pre- and post-judgment interest in tort actions, violates Plaintiff's right to equal protection of the law, guaranteed by Article I, Section 2 of the Missouri Constitution.

42.   Section 538.300 of the Revised Statutes of Missouri, which purports to exempt tort claims against health care providers from the statutory requirements for payment of pre- and post-judgment interest set forth in Section 408.040 of the Revised Statutes of Missouri, violates Plaintiff's right to equal protection of the law, guaranteed by Article I, Section 2 of the Missouri Constitution, by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so, and which amounts to a government taking of a property interest in a court judgment, and further violates the prohibition against special laws granting to any corporation, association, or individual any special or exclusive right, privilege or immunity, established by Article III, Section 40(28) of the Missouri Constitution.

43.   In requiring that future damages be paid in whole or in part in periodic or installment payments if the total award of damages in the action exceeds one hundred thousand dollars, R.S.Mo. § 538.220 violates the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence

12

plaintiffs without a rational basis for doing so, and which amounts to a government taking of a property interest in a court judgment since R.S.Mo. § 538.215 already requires a jury to put future damages at present value.

44. In failing to provide a reasonable index for inflation on periodic payments for future damages, R.S.Mo. § 538.220 violates Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest.

45. In failing to provide a reasonable index for inflation on periodic payments for future damages, R.S.Mo. § 538.220 violates the guarantee of due process of law set forth in Art. I, § 2 of the United States Constitution without a rational basis that furthers a legitimate interest.

46. Section 490.715 R.S.Mo., which purports to transfer from the jury to the court the authority to determine the value of medical treatment rendered to Decedent, violates the Plaintiffs' right to trial by jury as guaranteed by Article I, Section 22(a) of the Missouri Constitution, because the right to trial by jury as provided for in the Constitution includes the right to have a jury determine all of Plaintiff's damages without interference by the legislature.

47. Section 537.067 R.S.Mo., which purports to eliminate joint and several liability of tortfeasors who are found to bear less than fifty-one percent (51%) of the fault for Plaintiffs' injuries, and to prohibit any party from disclosing the impact of this provision to the jury, violates:

    a.    Plaintiff's right to due process of law, guaranteed by Article 1, Section 10 of the Missouri Constitution, because it may unreasonably deprive Plaintiff of full compensation for their injuries; and

    b.    Plaintiff's right to a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution, because the statute fails to

13

provide a reasonable substitute for the damages denied to plaintiff under the statute.

WHEREFORE Plaintiffs pray this Honorable Court for judgment in favor of Plaintiffs and against the United States of America in a sum just, reasonable and adequate to compensate Plaintiffs for their damages in the sum of ten million dollars, for costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

**ZEVAN DAVIDSON ROMAN LLC**

_/s/ Rachel Roman_

Rachel L. Roman                    #58553
rachel@zdrlawfirm.com
Morgan C. Murphy                   #64545
morgan@zdrlawfirm.com
211 N. Broadway, Suite 2675
St. Louis, MO 63102
(314) 588-7200 Office
(314) 588-7271 Facsimile
_Attorneys for Plaintiffs_

14